IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

TIMOTHY BOTHWELL,             )
                              )
    Plaintiff,                )
                              )   Civil Action No.
vs.                           )
                              )   98-AR-1950-S
                              )
GENERAL MOTORS CORPORATION,   )
et al.,                       )
                              )
    Defendants.               )

**MEMORANDUM OPINION**

Before the court is defendants' motion for summary judgment. Plaintiff, Timothy Bothwell ("Mr. Bothwell"), alleges that defendants, General Motors Corp.("Delphi"),[1] Gary Szanny, and Kenneth Hunt, violated Title VII of the Civil Rights Act of 1964, The Ku Klux Klan Act, and the Equal Pay Act when they failed to promote him and subjected him to racial harassment. Mr. Bothwell filed an enigmatic last minute second motion for an extension of the submission date. His first motion for an extension was granted on September 1, 1999. His second motion contains no satisfactory explanation for its lateness and makes reference to nothing that could tilt the balance in his favor. Except for his motions for

---

[1] Delphi Automotive Systems is the proper corporate defendant in this case. Delphi was previously a wholly owned subsidiary of General Motors Corporation. However, as a result of a recent spin-off, Delphi is now a wholly separate entity. Thus, the court will refer to "Delphi" as defendant.



extension plaintiff has made no response whatsoever to defendants' Rule 56 motion and brief. For the reasons set forth below, plaintiff's second motion for an extension is due to be denied, and defendants' motion for summary judgment is due to be granted.

### Pertinent and Undisputed Facts

Mr. Bothwell began work for Delphi as a laborer in the Production Material Control Department ("Material Department") on July 24, 1995. The Material Department monitors and disperses supplies and materials, including cable and terminal fields, which are used in the plant. Mr. Bothwell's responsibilities in the Materials Department included supplying the cutters with cable and terminals, and unloading the cable and terminals when they came in.

The standard procedure for supplying the cutters was as follows: the cutter would give an order sheet to Mr. Bothwell (or someone else in his department) and he would fill the order. Using a hand-held scanner, Mr. Bothwell would then delete or "kill" the serial number for the particular cable(s) or terminal(s) requested by the cutter. This would cause the computer system to automatically reorder the particular part(s) that the cutter had requested. If the serial number was not deleted, the part would not automatically be reordered and the computer would show that item as still in

stock. The ultimate consequence of failing to delete serial numbers would be "shutting the cutters down" - they wouldn't be able to do their jobs because they wouldn't have the materials.

Sometime in the fall of 1996, Mr. Bothwell applied for a position as Team Leader. He was interviewed by his immediate supervisor, Lana Waters, and was eventually selected as Team Leader by Gary Szanny because he "performed his duties in a satisfactory manner and exhibited a willingness to accept additional responsibilities." (Szanny Aff. ¶ 7.) Mr. Szanny was General Supervisor of the Material Department.

As Team Leader, Mr. Bothwell's duties included enhancing his team's overall productivity by training other team members, troubleshooting equipment, and improving operator skills. (Kitchings Aff. ¶ 5; Szanny Aff. ¶ 7.) According to Mr. Bothwell, he got along well with his supervisors when he was Team Leader. (Bothwell Depo., p. 71.)

In 1997, Delphi began establishing Coordinator positions in departments throughout the plant. The duties of the Coordinator in the Material Department consisted of supervising employees, meeting shipping and receiving schedules effectively, implementing divisional and corporate policies, advising management of new

3

developments, and maintaining department records. As General Supervisor of the department, Mr. Szanny was responsible for selecting the Coordinator. Mr. Bothwell applied for the Coordinator position in the Material Department as well as in the Cutting Department and in the Mega Mats Department.

From a pool of one hundred applicants for Coordinator in the Material Department, Mr. Szanny chose four for further consideration. Mr. Bothwell was one of those four. After reviewing the four applicants' files and asking for recommendations from their supervisors, Mr. Szanny decided to hire Kenneth Hunt. Mr. Hunt was recommended by his supervisor, had previous experience in the Methods Lab and the Cutting Department, and had previous supervisory experience in the Army and on a construction crew.(Szanny Aff. ¶ 14.) In *not* selecting Mr. Bothwell, Mr. Szanny took into consideration the fact that Ms. Waters had not recommended him for the position. Ms. Waters stated that Mr. Bothwell had failed to report to work or call in on several Saturdays. She also stated that Mr. Bothwell had failed to execute his duties as Team Leader in a satisfactory manner.

In August of 1997, the Materials Department was experiencing problems with inventory shortages because employees were failing to

delete serial numbers.  Mr. Szanny addressed this issue in a Department meeting in late August, 1997, and informed employees that disciplinary action would be taken if the serial numbers were not deleted.  However, after this meeting, employees continued to forget to delete serial numbers.

On August 20, 1997, Mr. Szanny had to have certain materials flown into the Birmingham Airport because the plant's supply had been completely depleted as a result of the serial number problem.  Mr. Szanny retrieved the materials himself after hours from the airport and hand delivered them to the Material Department in order to prevent a production shut down at one of the plants supplied by Delphi.

A few days later, Mr. Szanny hung a noose from the top of the office with a note attached which read "For next person who does not delete serial numbers."  The noose and note were hung near a desk from which Mr. Bothwell worked.  The next morning, plaintiff and others observed the noose and note.

Mr. Bothwell reported the incident to the vice president of the union, Larry Preston. Mr. Bothwell subsequently filed a grievance with Elijah Bynum, the Union Steward.  After Mr. Bothwell talked to Mr. Szanny about the noose, Mr. Szanny apologized and said he was

sorry that it had offended Mr. Bothwell. Mr. Bothwell felt that the noose was directed at him because he had told Mr. Szanny prior to that morning that he was one of the employees who had forgotten to delete the serial numbers the previous week. Mr. Bothwell also believed that Mr. Szanny's hanging of the noose was racist because to him, a noose represents the Ku Klux Klan.

Upon notification of the noose and note, Anthony Kitchings, the Delphi Human Resources Manager, began investigating the matter. Mr. Kitchings questioned Mr. Szanny as well as seven other witnesses. Based on these interviews, a management committee concluded that Mr. Szanny was solely responsible for hanging the noose and the note, and that Mr. Szanny's actions, although not based on race, were nevertheless inappropriate and would not be tolerated. As a result, Mr. Szanny received the following discipline: he was demoted, he was prohibited from supervising employees for two years, he was not considered for a merit increase for 1998, a disciplinary warning was placed in his personnel file, and he was placed on probation for one year.

On October 6, 1997, Mr. Bothwell filed a charge of discrimination with the EEOC. Following its investigation, the EEOC issued a Dismissal and Notice of Rights. The EEOC notified

plaintiff that it was unable to conclude that Delphi had violated the law. Mr. Bothwell subsequently filed this action on July 30, 1998.

### Summary Judgment Standard

Rule 56(c), F.R.Civ.P. provides that summary judgment shall be granted if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The Supreme Court has emphasized that this language means exactly what it says: there must be a _genuine_ issue of *material* fact, not merely some factual dispute. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-248, 106 S.Ct. 2505, 2510 (emphasis added). What this standard means in practice is that "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Anderson, 477 U.S. at 249, 106 S.Ct. at 2511 (citing First National Bank of Arizona v. Cities Service Co., 391 U.S. 253, 88 S.Ct. 1575 (1968)). Thus, the court must decide based on the evidence before it whether a jury could return a verdict for plaintiff. If the answer to that question is "yes," defendants' motion must be denied. If, on the

other hand, this court finds as a matter of law that a jury could not return a verdict for plaintiff, defendants' motion must be granted.

## COUNT 1: FAILURE TO PROMOTE

Before reaching the merits of Mr. Bothwell's claims against Delphi, the court will address the issue of individual, non-employer liability. Simply put, individual defendants cannot be held liable for violations of Title VII. See Busby v. Orlando, 931 F.2d 764 (11th Cir. 1991). Thus, all of plaintiff's claims under Title VII must be dismissed as to Gary Szanny and Kenneth Hunt. Accordingly, the rest of the opinion will address only Delphi's potential liability.

In order to prove a claim under Title VII for failure to promote, plaintiff must show: (1) that he is a member of a protected class; (2) that he sought and was qualified for the position; (3) that he was rejected (not promoted); and (4) that the employer filled the position with a person outside plaintiff's protected class. See Walker v. Mortham, 158 F.3d 1177 (11th Cir. 1998). Here, the court will assume that Mr. Bothwell has met these requirements because Delphi has not contested any of them. Thus, the McDonnell Douglas burden-shifting framework requires defendant to offer a

legitimate, nondiscriminatory reason for its promotion decision. Delphi has met this burden. The person selected for the promotion, Kenneth Hunt, was recommended by his supervisor and had previous experience in the Methods Lab and the Cutting Department of the Delphi facility. Furthermore, he had previous supervisory experience as a squadron leader in the Army, and as a supervisor on a construction crew.

In the face of this legitimate, nondiscriminatory reason for the promotion decision, Mr. Bothwell can survive summary judgment by presenting sufficient evidence to demonstrate the existence of a genuine issue of material fact as to the truth of Delphi's proffered reason for its decision. See Combs v. Plantation Patterns, 106 F.3d 1519, 1529 (11th Cir. 1997). In other words, as long as plaintiff shows that there is a genuine issue of material fact as to the truth of Delphi's legitimate, nondiscriminatory reason, it remains for the *jury* to decide whether Mr. Bothwell has proven the ultimate issue of intentional discrimination.

As the Eleventh Circuit has pointed out, plaintiff must "present concrete evidence in the form of specific facts which show that the defendant's proffered reason is mere pretext. Mere conclusory allegations and assertions will not suffice." Earley v.

Champion International Corp., 907 F.2d 1077, 1081 (11th Cir. 1990). Mr. Bothwell has not met this burden. He has not offered any specific facts which would cast doubt on the truth of defendant's legitimate, nondiscriminatory reason. In his deposition, plaintiff stated that he should have been selected over Mr. Hunt because Mr. Hunt was new to the department and because he had trained Mr. Hunt when Mr. Hunt came into the department. (Bothwell Depo., p. 113.) However, Mr. Bothwell's own opinion regarding the wisdom of Delphi's decision is not enough to refute the fact that Mr. Hunt was qualified for the position.

Alternatively, Mr. Bothwell can survive summary judgment "by persuading the court that a discriminatory reason more likely motivated the employer." Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 256, 101 S.Ct. 1089, 1095 (1981). However, Mr. Bothwell has fallen short here as well. Plaintiff's own testimony does not even allege that race was the reason Mr. Hunt was selected. In fact, Mr. Bothwell speculates that Mr. Hunt was selected was because he was *older* than all of the other applicants in shipping. (Bothwell Depo., p. 114.) Furthermore, Mr. Bothwell also stated that others in his department who were *white* thought that they should have been selected over Mr. Hunt because of their

10

relative length of time in the department. (Bothwell Depo., pp. 108-109.)  Thus, not even Mr. Bothwell's own testimony alleges that race was the reason for Mr. Hunt's promotion.

The only evidence in the record that even begins to suggest that race could have been a factor in the promotion decision is the noose incident. While this court is not ignorant of the symbolism a noose has in our country's tumultuous racial history, there is no evidence to suggest that Mr. Szanny hung the noose as a statement about race or that this was in any way connected to Mr. Szanny's promotion decision.  The note attached to the noose read "For next person who forgets to delete serial numbers."  Mr. Szanny hung the noose and note after having to hand deliver materials to the plant from the Birmingham Airport because employees had forgotten to delete serial numbers. Delphi's investigatory board found that Mr. Szanny hung the noose, not as a racist act, but because he was frustrated with the fact that the serial numbers were not being deleted.

In sum, there is simply no evidence that Mr. Szanny failed to promote plaintiff *because of his race*. Instead, the facts cut in the opposite direction because Mr. Szanny had promoted plaintiff to Team Leader in the past and initially had selected Mr. Bothwell as one

of only four applicants out of one hundred to be considered for the Coordinator position. These facts tend to disprove the idea that Mr. Szanny would not promote Mr. Bothwell *because of race*. Given plaintiff's inability to produce any evidence that shows pretext, summary judgment for defendant is due to be GRANTED as to Count One.

### COUNT 2: RACIAL HARASSMENT

Mr. Bothwell alleges that he was subjected to racial harassment under The Ku Klux Klan Act of 1871, 42 U.S.C. § 1985(3) and under Title VII.[2] As to the claim under 42 U.S.C. § 1985(3), the Supreme Court has held that § 1985 cannot be invoked to redress violations of Title VII. See Great American Federal Savings & Loan Assn. v. Novotny, 442 U.S. 366, 378, 99 S.Ct. 2345, 2352 (1979). Because the facts underlying Mr. Bothwell's claim of racial harassment under Title VII form the basis of his § 1985 claim, his claim under § 1985 must be dismissed. It would have failed if it had been alone.

As to Mr. Bothwell's claim for racial harassment under Title VII, he must show that: (1) he belongs to a protected class; (2) he

---

[2] Count Two of plaintiff's complaint states: "The Court has jurisdiction pursuant to 42 U.S.C. § 185(2)and(3); 2000e and e3, and under State law." The court has no knowledge of any particular State statute at issue in this case, as plaintiff has not cited to any applicable State law. Because this court is not clairvoyant, it cannot analyze any claims not presented. Plaintiff does make a cursory reference to "intentional infliction of emotional distress" in ¶ 16 of his complaint. However, even if plaintiff is alleging the tort of intentional infliction of emotional distress, this court would dismiss for lack of jurisdiction because plaintiff's federal claims are being dismissed.

was subjected to unwelcome harassment; (3) the harassment was based on his protected status; and (4) the harassment affected a term, condition or privilege of employment.

As the Supreme Court has pointed out

> [N]ot all workplace conduct that may be described as "harassment" affects a "term, condition, or privilege" of employment within the meaning of Title VII. . . For [harassment] to be actionable, it must be sufficiently severe or pervasive "to alter the conditions of [the victim's] employment and create an abusive working environment."

<u>Meritor Savings Bank, FSB v. Vinson</u>, 477 U.S. 57, 67, 106 S.Ct. 2399, 2405 (1986)(citations omitted).

Here, plaintiff has failed to demonstrate that there was severe or pervasive harassment. There is no evidence that Mr. Bothwell was subjected to a racially hostile work environment. In plaintiff's deposition, he says that he never heard anyone use racial slurs in the workplace, only that someone told him that racial slurs had been used. (Bothwell Depo., p. 101.) He did observe racially derogatory writing on the men's bathroom walls which was cleaned up at some point. (Bothwell Depo., pp. 103-104.) However, Mr. Bothwell stated that, other than this, he had not observed anything else that he thought was racial. (Bothwell Depo., p. 104.) Thus, this is not a case in which racially derogatory remarks in the workplace were

13

commonplace, overt, denigrating, pervasive and shocking. See, e.g., EEOC v. Beverage Canners, Inc., 897 F.2d 1067, 1070 (11th Cir. 1990). Furthermore, while this court agrees that Mr. Szanny's hanging the noose was an exercise of poor judgment, this incident alone, *even if* shown to be motivated by racial animus, does not rise to the level of a hostile work environment.

Because there is no evidence to show that plaintiff was subjected to harassment sufficiently pervasive or serious so as to alter the terms and conditions of his employment, summary judgment for defendant is due to be GRANTED as to Count Two.

### COUNT 3: EQUAL PAY ACT

Count Three of Mr. Bothwell's complaint is labeled "EQUAL PAY ACT/BACK PAY." The complaint then alleges that Mr. Bothwell is entitled to the wages due him as a result of his not being promoted to Coordinator. Thus, it appears that Delphi's failure to promote Mr. Bothwell forms the basis for his claim under the Equal Pay Act.

Plaintiff is obviously unaware that the Equal Pay Act exists only to prohibit wage discrimination on the basis of *gender*. The Act makes it unlawful for an employer to pay different wages to employees of opposite sexes for essentially the same work.

Therefore, plaintiff's invocation of the Equal Pay Act in a racial discrimination case is inappropriate and, as a result, defendant's motion for summary judgment as to Count Three is due to be GRANTED.

## CONCLUSION

A separate and appropriate order will be entered.

DONE this 24th day of September, 1999.

*[signature]*

WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE